J-S01038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARQUIS JACKSON | |
| Appellant | No. 3175 EDA 2014 |

Appeal from the Judgment of Sentence August 11, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005965-2013

BEFORE:  GANTMAN, P.J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED FEBRUARY 17, 2016**

Appellant, Marquis Jackson, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for two (2) counts of robbery and one (1) count each of conspiracy and possessing instruments of crime ("PIC").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. On March 25, 2013, Appellant's brother (Andre Jackson) and the two victims, Eric Iezzi and Kristian Gilkin, were in the living room of Appellant's father's house watching television.  Appellant, codefendant Charles McMichael, and a woman entered the house.  Appellant told his brother to go upstairs.  Codefendant approached Mr. Gilkin and pointed a gun at his head

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903, 907(a), respectively.

while ordering him to empty his pockets. Mr. Gilkin complied and placed a pack of cigarettes along with a cell phone or iPod on a table. Codefendant knocked the items off the table and then walked over to Mr. Iezzi. Codefendant pointed his gun at Mr. Iezzi and asked him what he had in his pockets. Mr. Iezzi said he had nothing. Appellant was standing right next to codefendant. Codefendant then placed the gun against Mr. Iezzi's neck and either Appellant or codefendant patted him down. At that point, Mr. Gilkin ran out of the house. Codefendant became angry and struck Mr. Iezzi with the gun. Appellant and codefendant then exited the house together. Before leaving, Appellant told Mr. Iezzi, "Don't go to the cops. I know where you live. I know which school you go to. I will find you." After Appellant and codefendant left, Andre Jackson returned downstairs; and he and Mr. Iezzi went outside to find Mr. Gilkin. Andre Jackson and the two victims told Appellant's father about the robbery, and he took the three of them to a police station.

Following a joint trial with codefendant, a jury convicted Appellant on May 13, 2014, of two counts of robbery and one count each of conspiracy and PIC. On August 11, 2014, the court sentenced Appellant to concurrent terms of ten (10) to twenty (20) years' incarceration for the robbery and conspiracy convictions, and a concurrent term of two-and-a-half (2½) to five (5) years' incarceration for PIC. On August 13, 2014, Appellant timely filed a post-sentence motion, which the court denied on November 4, 2014.

Appellant filed a timely notice of appeal on November 10, 2014. The court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), and Appellant timely complied.

Appellant raises the following issues for our review:

WAS THE VERDICT BASED ON INSUFFICIENT EVIDENCE?

WAS THE VERDICT CONTRARY TO THE WEIGHT OF THE EVIDENCE?

IN CLOSING ARGUMENT, DID THE PROSECUTOR COMMIT A **BRUTON**[2] VIOLATION, BY SUGGESTING THAT THE JURY COMPARE THE STATEMENTS MADE BY [APPELLANT AND CODEFENDANT]?

(Appellant's Brief at 4).[3]

In his first issue, Appellant argues the Commonwealth produced insufficient evidence of his intent to commit robbery. Appellant asserts he did not use a weapon, he had no knowledge codefendant was bringing a gun to the house, and none of the victims' property was actually taken. Appellant contends his and codefendant's conduct was consistent with their intent simply to "prank" or "scare" Appellant's brother, who had allegedly stolen money or items from Appellant. Appellant concludes the evidence

---

[2] **Bruton v. United States,** 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

[3] Contrary to the order of issues in the statement of questions involved, the argument section of Appellant's brief presents his sufficiency challenge before his weight claim. Therefore, we will address the sufficiency challenge first.

was so weak and inconclusive that, as a matter of law, the jury could not have found that Appellant intended to rob the victims. We disagree.

A challenge to the sufficiency of the evidence implicates the following legal principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

The Crimes Code defines robbery in relevant part as follows:

**§ 3701. Robbery**

**(a) Offense defined.—**

(1) A person is guilty of robbery if, in the course of

- 4 -

committing a theft, he:

*    *    *

(ii)  threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(ii).  **See also Commonwealth v. Robinson**, 936 A.2d 107 (Pa.Super. 2007), *appeal denied*, 597 Pa. 705, 948 A.2d 804 (2008) (stating crime of robbery does not require completion of predicate offense of theft); **Commonwealth v. Everett**, 443 A.2d 1142 (Pa.Super. 1982) (holding defendant's robbery conviction was supported by sufficient evidence where defendant aided and abetted cohort in robbery, even though defendant himself did not carry weapon, employ threats, or cause personal injury).  "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally."  18 Pa.C.S.A. § 907(a).

A conviction for conspiracy requires proof that:

(1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime.

**Commonwealth v. Barnes**, 871 A.2d 812, 819 (Pa.Super. 2005).  **See also** 18 Pa.C.S.A. § 903(a).

While the Commonwealth is not required to prove a written or express agreement, a tacit agreement must be established by reasonable inferences arising from the facts and circumstances and not by mere suspicion or

conjecture. Circumstances like an association between alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and/or participation in the object of the conspiracy, are relevant when taken together in context, but individually each is insufficient to prove a conspiracy.

*Commonwealth v. Perez*, 931 A.2d 703, 708 (Pa.Super. 2007) (internal citations omitted). "[E]ach conspirator is criminally responsible for the actions of his co-conspirator, provided that the actions are accomplished in the furtherance of a common design." *Commonwealth v. Baskerville*, 681 A.2d 195, 201 (Pa.Super. 1996), *appeal denied*, 547 Pa. 723, 689 A.2d 230 (1997).

Instantly, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence established the following. Appellant and codefendant entered Appellant's father's house together, where codefendant pointed a gun at each of the two victims and ordered them to empty their pockets. Appellant ordered his brother to leave the room during the incident. Appellant told one of the victims, "Don't go to the cops. I know where you live. I know which school you go to. I will find you." Appellant and codefendant then fled together. The evidence showed Appellant directly participated in the robbery. The Commonwealth was not required to prove that Appellant or codefendant took any of the victims' items. *See Robinson, supra*. Additionally, Appellant's motive to rob the victims was irrelevant. Thus, the evidence was sufficient to convict Appellant of robbery and conspiracy. *See Perez, supra*; *Jones, supra*; *Everett, supra*.

Moreover, Appellant was liable for all acts taken by codefendant in furtherance of the conspiracy, including codefendant's use of a firearm during the robbery. **See Baskerville, supra**. Therefore, Appellant's PIC conviction also was supported by sufficient evidence. **See** 18 Pa.C.S.A. § 907(a).

In his second issue, Appellant argues the testimony of his brother and the victims was reluctant and inconsistent, and another witness testified to the "bad character" of Appellant's brother. Appellant asserts he did not hold a gun or know that codefendant was going to bring a gun to the house. Appellant claims codefendant had a license for the gun. Appellant reiterates that neither he nor codefendant actually took any of the victims' property. Appellant contends he and codefendant described the incident as a prank intended to scare his brother. Appellant concludes the court should have set aside the verdict as against the weight of the evidence. We disagree.

Our standard of review for a challenge to the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight

claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (internal citations omitted).

Instantly, the court reasoned as follows:

> [T]he three witnesses' testimony was, in a legal sense, absolutely consistent on all of the major elements of the crimes. The only real inconsistencies were in minor petty details, such as whether it was an iPod or a cell phone, or did one defendant arrive first or did they arrive at the same time. Each of [the victim's] descriptions of the perpetrators and their actions clearly showed that they were put in fear of immediate serious injury and that it was [Appellant and codefendant] who did it in an attempt to commit a theft upon the two [victims] and were acting as cohorts. [Appellant and codefendant] themselves confirmed that they agreed to do something to scare [Appellant's brother] and, since they did not state in their confessions exactly what they intended that something to be, the fact finder was perfectly entitled to logically conclude that that something obviously turned out to be to rob [Appellant's brother's] friends in front of his face. If, as [Appellant] seemed to claim, the reason for all of this was because [Appellant's brother] took [Appellant's] money or clothes, why not scare him by robbing him as opposed to two innocent bystanders[?]
>
>        \*     \*     \*
>
> In none of the convictions was the [Commonwealth] required to prove that [Appellant] actually used a weapon, …took anything, or that…he specifically told [codefendant] to bring or…use a weapon. The evidence clearly demonstrated that a gun was used and that [Appellant] participated in its use during a robbery which he conspired with [codefendant] to perpetrate. The fact that [codefendant] had a license to carry the gun, irrespective of whether…his Arizona license did permit him to legally carry one in Pennsylvania, did not give him legal

permission to use it in the commission of a crime or alleviate [Appellant] from the joint responsibility for its possession and that use, even if [codefendant] took it upon himself to employ the weapon in their agreed joint endeavor without [Appellant's] knowledge, particularly where [Appellant] willingly participated in its use after that knowledge was acquired.

\* \* \*

Nor does it matter that neither [Appellant nor codefendant] took anything. … The fact that [Appellant and codefendant] apparently did not find whatever it was they were hoping to find does not disprove or contradict the evidence which clearly showed that they acted in a manner that gave every indication of an intention to find and to take something. … The court fails to see how [codefendant's] good character, …the bad character of one of the witnesses, or that…[Appellant] only wanted to scare his brother and…the incident was simply a prank gone bad in [any way] precluded a reasonable fact finder, even if all of those allegations were true and believed, from finding that [Appellant] willingly participated in the criminal acts of which he was accused irrespective of his motives. [Appellant] is simply asking the court to reassess the evidence, ignore all of the probative evidence, and substitute his selective and self-serving interpretation of it for that of the jury, an endeavor in which the court is prohibited from engaging.

(Trial Court Opinion, filed January 15, 2015, at 17-23). The record supports the court's analysis. Appellant repeats some of his sufficiency arguments, which we have determined are meritless. The evidence supported the jury's finding that Appellant conspired with codefendant and intentionally put the victims in fear of immediate serious bodily injury in the course of committing a theft. **See** 18 Pa.C.S.A. § 3701(a)(1)(ii). That finding was not precluded by Appellant's purported ignorance that codefendant was going to bring a

gun to the robbery, Appellant's alleged motive to scare his brother, or the fact that Appellant and codefendant did not take the items they forced the victims to remove from their pockets. The jury was free to reject Appellant's claims and version of events in his statement to the police, and determinations of witness credibility were within the jury's province. *See Champney, supra*. Appellant fails to show how the court abused its discretion when it rejected his weight claim. Therefore, Appellant's weight claim merits no relief. *See id.*

In his third issue, Appellant argues the prosecutor improperly told the jury during closing argument to compare Appellant's and codefendant's statements to the police. Appellant claims the prosecutor used codefendant's statement to suggest Appellant had lied when he denied any intent to commit a crime. Appellant concedes he did not seek a redaction of the police statements or otherwise challenge their admissibility. Appellant asserts the parties stipulated that the prosecutor was nevertheless prohibited under *Bruton* from using codefendant's statement against Appellant in closing argument. Appellant concludes the trial court should have granted his request for a mistrial based on the prosecutor's allegedly improper remarks. We disagree.

When reviewing a claim of prosecutorial misconduct, "our attention is focused on whether the defendant was deprived of a fair trial not a perfect one." *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa.Super. 2005),

*appeal denied*, 593 Pa. 726, 928 A.2d 1289 (2007). "Prosecutorial misconduct…will not be found where comments were based on evidence or proper inferences therefrom or were only oratorical flair. In order to evaluate whether comments were improper, we must look to the context in which they were made." **Id.** "[A] prosecutor is allowed to respond to defense arguments with logical force and vigor." **Commonwealth v. Chmiel**, 585 Pa. 547, 620, 889 A.2d 501, 544 (2005), *cert. denied*, 549 U.S. 848, 127 S.Ct. 101, 166 L.Ed.2d 82 (2006). The "determination whether the prosecutor's remarks were unfairly prejudicial rests within the sound discretion of the trial court and our inquiry of necessity must turn to whether an abuse of discretion was committed." **Commonwealth v. Correa**, 664 A.2d 607, 609 (Pa.Super. 1995), *appeal denied*, 544 Pa. 673, 678 A.2d 364 (1996).

"Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has a right to confront witnesses against him." **Commonwealth v. Rivera**, 565 Pa. 289, 299, 773 A.2d 131, 137 (2001), *cert. denied*, 535 U.S. 955, 122 S.Ct. 1360, 152 L.Ed.2d 355 (2002). In **Bruton**, the United States Supreme Court held that admission of a facially incriminating confession by a non-testifying co-defendant introduced at the defendant and co-defendant's joint trial, deprives a defendant of his Sixth Amendment right to confrontation, even where the court instructs the jury to consider the confession only against the co-defendant. **Id.** at 135-37; 88 S.Ct. at 1627-

28; 20 L.Ed.2d at _____. Nevertheless, "[i]f a confession can be edited so that it retains its narrative integrity and yet in no way refers to [the non-confessing] defendant, then use of it does not violate the principles of *Bruton*." *Commonwealth v. Travers*, 564 Pa. 362, 368, 768 A.2d 845, 848 (2001). Although *Bruton* announced an evidentiary rule, our Supreme Court has recognized its potential applicability to prosecutorial remarks. *See Commonwealth v. Cannon*, 610 Pa. 494, 22 A.3d 210 (2011) (stating *Bruton* violation may arise when prosecutor discloses to jury that co-defendant's statement has been redacted and unequivocally identifies defendant as individual whose name was removed). The applicability of the *Bruton* rule to prosecutorial remarks is a question of law. *Id.* Our scope of review is plenary and our standard of review is *de novo*. *Id.*

Instantly, the prosecutor made the following remarks during closing argument:

> [W]hen I first wondered, you know, what this really was about, I felt like it was just beyond me, that an individual could set up his little brothers, or little brother and his friend to be held up at gunpoint, but then I read [Appellant's] words. It reminded me that, you know, counsel said that those kids had an opportunity to concoct[] a story during that time they walked from the house where something happened to the father's house down in deep South Philly, but then I thought even more about human nature. I wonder who else had an opportunity to concoct a story to sit down and decide, well, what are we going to say happened just in case we get in trouble, but, see, a jury of 14 people, 13, inside [Appellant's] head had already made up its mind. The jury of 13 people inside of [codefendant's] mind had already deliberated and came back guilty. So instead of going with

- 12 -

what they, you know, the agreement that they had, they both come in and admit and try to distance themselves as far away from the incident as possible. They don't come in and tell the same story. They come in and leave their portions of what they did out. [reading from Appellant's police interview] "What happened on March 25, 2013, [Appellant]? What happened?" "I came back with a bag to get the rest of my belongings. I had clothing inside of my house. I can't find myself. Andre, my brother, was there with two other people I never seen before." We know that that is true. Sounds a lot of like what they said. "I'm looking for my [stuff]. I call Andre to the basement. I asked him for the bag. I head downstairs. I asked him for my sneakers. He walked off. My brother is a thief. He has a problem with this. I wanted to scare Andre." So sneakers and a bag with clothes led you to call [codefendant] over with a gun? Isn't that just typical little brother behavior[?] Don't little brothers always try to wear their big brother's clothes? [Codefendant] came over. We know [codefendant] came over. "[Codefendant] I heard come in the front door. I was in the basement. So was Andre. Andre was acting like he was trying to help find my stuff. I heard a commotion so I went upstairs. I see[] [codefendant] with a gun at his side. I made Andre go upstairs." So wait, that sounds a lot like the story that all three children said on the day of the incident except for [Appellant]—since he's already made up in his mind that he's guilty, he is divorcing himself from it. You weren't there when [codefendant] came in now, huh? You came upstairs and the gun was already out. "I talked to [codefendant] and told him to go home. I talked to the white boy. [Codefendant] had a gun permit. I leave out. I went to 24th and Tasker. He took my money, prior to this." So I guess he's referring to his little brother. "This is how it all got started. My dad threw me out. I never had [a] gun. [Codefendant] also had his girlfriend with him. I talked to the two boys." [Appellant] knew what was up. He was caught, and his first inclination was to do what every guilty person does. It was him. But this still doesn't sound right. Something is missing here, because sneakers, clothes, [codefendant] just walking into the house and started to rob two kids when the joke is—the joke is to rob Andre. So then why do you come in without announcing yourself to the person that invited you over

and just randomly rob two white boys? That doesn't make sense.

So then you go to the next statement. You see, [codefendant] knew he was in trouble. A jury of 13 people inside of his mind had already found him guilty. So what does he do? He goes, "It was him." So, [codefendant], what is your version of the story? How do you try and get yourself out of this? [reading from codefendant's police interview] "Do you know [Appellant]?" "Yes." "How long have you known [Appellant]?" He says, "About ten years." "Did [Appellant] contact you on March 25, 2013?" "Yes." "How many times did [Appellant] contact you?" "I will go once." "About what time did [Appellant] contact you on March 25th?" "Approximately, 1:00 p.m." "What did [Appellant] say to you on 3/25/13?" "Just stop pass, Bro. We're going to scare Ang." …

"Do you remember how [Appellant] wanted to scare Andre Jackson?" "Yes." "What happened?" "Basically, we came in the door. It was unlocked." "[Appellant] told me to come there. My girlfriend was there with me. I showed the gun. Asked Andre, Where is the other gun? Andre was not saying anything. He was more surprised about what was going on." … "We asked the other where the gun was." Assuming, we asked the other kids, those white kids. ["]Where is the other gun? Where is the gun? I was standing in front of Andre most of the time. I turned around. [Appellant] was letting one of the kids out of the door. I asked [Appellant] why he let him out of the door." You think about what [Mr. Iezzi] testified to. Remember, [Mr. Iezzi]—this was in nobody's statement. Remember [Mr. Iezzi] said [Appellant and codefendant] started arguing with each other when [Mr. Gilkin] ran out? The thing about it is…we're reading these statements, and if you think about it in a vacuum, well, [Appellant and codefendant] know what happened. Crazy thing about it is, they don't know what those kids have said. They don't know that. They have not had the opportunity to read statements of the three children. They have not had that opportunity, so they are trying to tell their story to the best of their ability so that it's self-serving to them, but they don't have the benefit of the knowledge that the detectives have. They don't have the benefit of the

knowledge that the officers who are investigating the case have, Detective Tocco, Quinn, Powell, they already have interviewed these witnesses. They already know what questions to ask to make sure that these guys literally tie[] themsel[ves] up in their lies and they can't get out of them.

(N.T. Trial, 5/12/14, at 95-99). Appellant subsequently moved for a mistrial on the ground that the prosecutor's comments were improper under **Bruton**. The court reasoned as follows in its Rule 1925(a) opinion:

> It should be reiterated that neither [Appellant nor codefendant] objected to the submission of their own or the other's statements to the police into evidence, nor to the references in them as to what one defendant said the other defendant said or did or referring to each other by name in doing so, nor did they request that those references be redacted. Defense counsel specifically advised the court that "there was a conscious decision not to go through a redaction," and both counsel specifically advised the court that they did not intend to dispute the voluntariness or accuracy of the content of them as described by the police witnesses. It would not be unreasonable to assume that the reason they did not request redactions was so they could both argue that [Appellant and codefendant] only mutually intended to join in a harmless prank to teach Andre [Jackson] a lesson. Once they agreed to allow their references to each other in the statements to be admitted, there was no legal bar to repeating them in closing, as long as there was no suggestion that the jury could consider them as evidence against the other.[4] …
>
> The sole basis for [Appellant's] claim is a very brief portion of the state's closing, but such a conclusion can only be properly supported by a reading of all of the relevant portions of that closing which clearly shows that [the

---

[4] The court stated in its charge to the jury that each statement could be considered as evidence only against the individual who made it.

prosecutor] did not argue that [Appellant and codefendant] did not tell the same story *vis-à-vis* each other, or that they were accusing each other of anything. His actual argument, in its full context, was, while perhaps a little somewhat inarticulately presented in the one small portion of it cited, that neither [Appellant nor codefendant] told the same story as the victims. [The prosecutor] only pointed out what each of them said about their own actions and that those actions were based on what they each heard or saw the other say or do. The prosecutor never claimed or implied that they were inconsistent with each other, which, of course would have been inaccurate since they were virtually identical, nor that either statement should be considered to be evidence of what the other defendant said or did. He did not contrast [Appellant's and codefendant's] statements with each other[,] but the victims, simply noting that [Appellant and codefendant] did not tell the same story as the victims in that, while much of what they each said comported with the witnesses' accounts, some of the details contained in the latter were either omitted or denied in the former. …

\* \* \*

The remark about [Appellant and codefendant] blaming each other was not meant to convey that [they] were blaming each other for the robbery or to [imply] that the jury could consider each of their versions to be evidence against the other, in particular because it was not necessary since both [Appellant and codefendant] agreed that each of them did, in fact, do and say what the other said they did. On the contrary, the prosecutor made clear that their describing what the other did or said was an attempt by each of them to try to justify their own actions in their own minds. The prosecutor did not say that [Appellant and codefendant] were distancing themselves from each other; he said that they were trying to distance themselves from their agreement to scare Andre [Jackson] by robbing the victims. He was simply noting that each of them was trying to use what he believed the other did or said to justify his own individual actions.

(Trial Court Opinion at 24-27). The record supports the court's analysis.

- 16 -

Appellant did not object to the admission of codefendant's statement to the police, or request a redaction of the statement to remove any references to Appellant, pursuant to *Bruton*. Thus, there was no bar to the prosecutor saying Appellant's name when reading from codefendant's statement during closing argument. *See Commonwealth v. Young*, 397 A.2d 1234 (Pa.Super. 1979) (holding defendant waived *Bruton* claim by failing to raise it before trial court). Moreover, the prosecutor did not attempt to use either Appellant's or codefendant's statement as evidence against the other defendant. The prosecutor did not point out differences between Appellant's and codefendant's statements. Rather, the prosecutor permissibly contrasted their statements with the testimony and statements of the victims, emphasizing that Appellant's and codefendant's statements were largely consistent with the victims' statements except for certain incriminating details. Thus, *Bruton* is not implicated here. *See Cannon, supra*. The prosecutor's remarks referred to evidence of record and were in fair response to the arguments of defense counsel that Andre Jackson and the victims had fabricated their accounts of the robbery. *See Chmiel, supra*; *Harris, supra*. Therefore, the trial court acted well within its discretion when it denied Appellant's request for a mistrial. *See Correa, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/17/2016