J-S81043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL S. GELSINGER | : | |
| | : | |
| Appellant | : | No. 1513 MDA 2018 |

Appeal from the PCRA Order Entered August 17, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000926-2014


BEFORE:   STABILE, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MARCH 04, 2019**

Appellant, Michael S. Gelsinger, appeals from the order entered in the Court of Common Pleas of Dauphin County dismissing his first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§9541-9546 after a hearing.  Herein, Appellant contends the court erred in rejecting his four ineffective assistance of trial counsel claims.  We affirm.

The PCRA court sets forth the pertinent facts and procedural history, as follows:

> [At] 1:00 a.m. on December 6, 2013, Joseph Payne-Casiano and [his brother,] Petitioner [hereinafter "Appellant"] drove to the residence of Payne-Casiano's girlfriend, Monique Dockens. Monique [resided] with her father, Dion Dockens and her sister, Tiana Dockens.  Tiana was dating Sean Fox, who lived with Justin Baxter a few houses away from the Dockens' residence.
>
> [An] argument erupted between Baxter and Payne-Casiano, which ultimately resulted in Appellant and Baxter brandishing firearms

_____

*   Former Justice specially assigned to the Superior Court.

at each other.    [Mr.] Dockens intervened, and the parties separated.

At that point, Baxter and Tiana began walking towards [the residence of Baxter and Tiana's boyfriend, Sean Fox], and Payne-Casiano and Appellant returned to their vehicle.  [According to the trial testimony offered by Mr. Dockens,] Payne-Casiano drove his vehicle in the direction that Baxter [and Tiana were] walking, and Appellant reached out of the passenger window and fired three shots at Baxter.  Baxter shot back . . . while [he stood near Tiana] on the porch of his residence.  The shots from Appellant's gun hit and fatally injured Tiana. . . .

Appellant was ultimately found guilty of first-degree murder, attempted homicide, possession of a firearm prohibited, and carrying a firearm without a license.  Appellant was sentenced [to life imprisonment without the possibility of parole for first-degree murder, and to concurrent terms of incarceration for the remaining convictions].

[Appellant filed a direct appeal in which he challenged the sufficiency of the evidence, the weight of the evidence, and the trial court's denial of Appellant's motion to sever his trial from co-defendant's trial.  On March 29, 2016, this Court filed its memorandum decision affirming judgment of sentence.  ***See Commonwealth v. Gelsinger***, No. 627 MDA 2015 unpublished memorandum (Pa.Super. filed March 29, 2016).  Subsequently, on September 23, 2016, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal.]

[On June 7, 2017,] Appellant filed a *pro se* PCRA Petition, and [the PCRA court] appointed Jennifer Tobias, Esq., to represent him. [After counsel filed an amended PCRA petition, the PCRA court] held a Hearing on May 31, 2018 and June 1, 2018 [and thereafter directed counsel and the Commonwealth to file post-hearing briefs.  By its order of August 17, 2018, the PCRA court dismissed Appellant's PCRA petition as meritless.].

PCRA Court Opinion, 8/17/18, at 1-2, 4-5.  This timely appeal followed.

Appellant presents the following questions for our consideration:

1. Whether Trial Counsel was ineffective for failing to argue that Harrisburg Police Department did not perform gun residue

testing on Joseph Payne-Casiano, the co-defendant in this case?

2. Whether Trial Counsel was ineffective for failing to object to the Commonwealth's evidence of Justin Baxter's holster and magazine?

3. Whether Appellate Counsel was ineffective for failing to raise the issue on appeal regarding the fact that the Commonwealth did not perform gunshot residue on the co-defendant in this case?

4. Whether Appellate Counsel was ineffective for failing to file a cross-appeal on direct review as to the unreasonable application of established federal and state law.

Appellant's brief, at 5.

Our standard of review regarding an order denying post-conviction relief under the PCRA is whether the determination of the court finds support in the evidence of record and is free of legal error. **Commonwealth v. Ragan**, 923 A.2d 1169, 1170 (Pa. 2007). This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. **Commonwealth v. Touw**, 781 A.2d 1250, 1252 (Pa. Super. 2001).

All of Appellant's issues assert the ineffective assistance of counsel. With respect to ineffectiveness claims, our Supreme Court has directed that the following standards apply:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or

innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, [ ] 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland**[ **v. Washington**, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [ ] 527 A.2d 973 [(Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, [ ] 10 A.3d 282, 291 [(Pa. 2010)]. "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, [] 66 A.3d 253, 260 [(Pa. 2013)] (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali**, **supra**. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, [ ] 57 A.3d 607, 613 [(Pa. 2012)] (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, 10 A.3d at 291 (quoting **Commonwealth v. Collins**, [ ] 957 A.2d 237, 244 [(Pa. 2008)] (citing **Strickland**, 466 U.S. at 694, 104 S.Ct. 2052)).

**Commonwealth v. Spotz**, 84 A.3d 294, 311-12 (Pa. 2014).

In Appellant's first issue, he contends that trial counsel ineffectively failed to underscore the importance of investigators' failure to subject his brother, co-defendant Joseph Payne-Casiano, to the same gunshot residue test to which it required Appellant and other individuals to submit. Indeed,

Appellant maintains, one individual tested was Sean Fox, Tiana Dockens' boyfriend and Baxter's housemate, whom no one even placed at the shooting scene. Yet, Appellant's brother, who rode in the car from which shots were fired, was never tested for residue. Appellant claims this omission had the unfairly prejudicial effect of singling him out for a shooting crime that his brother was equally capable of committing. We disagree.

At trial, Tiana Dockens' father testified that he observed Payne-Casiano driving the car toward Baxter's house when Appellant, sitting in the passenger seat, initiated gunfire upon Baxter. N.T. 12/2/14, at 14-35. Monique Dockens also testified that she witnessed Appellant's hand come out of the passenger's side window and fire the first shots, prompting Baxter to shoot back. N.T. at 108. Significantly, Appellant, himself, admitted at trial that he fired a gun at Baxter, although he claimed to do so in self-defense. Notably, there was no suggestion at trial that Payne-Casiano fired a gun during the time in question.

Therefore, without an evidentiary basis to support testing Payne-Casiano for gunshot residue, Appellant's challenge against counsel's silence on this matter lacks arguable merit. For this reason, Appellant may not prevail on his first issue. Moreover, because his third issue—assailing direct appeal counsel's advocacy for failing to challenge the verdict based on the failure to conduct residue testing of Payne-Casiano—derives from the same failed argument, we find it meritless, as well.

In Appellant's second issue, Appellant claims that trial counsel rendered ineffective assistance when he stipulated to submitting to the jury during

deliberations a collection of Commonwealth exhibits that included Exhibit C-11, which consisted of the holster and magazine belonging to the .40 Glock handgun fired from the porch during the shootout. Specifically, Appellant contends counsel should have objected to sending Exhibit C-11 to the jury, as the items caused him undue prejudice by confusing the jury to conclude that it was Appellant—and not Baxter—who used those items on the night of the alleged crime. We discern no merit to Appellant's claim of undue prejudice or confusion.

During trial, the jury learned that the parties stipulated to ballistics evidence recovered at the shooting scene. Recovered from Baxter's porch were spent .40 caliber cartridge cases, which had been fired from a .40 Glock handgun found outside the property. The Glock, itself, contained one live round in the chamber and six rounds in an attached magazine with a 13-round capacity. N.T. 12/3/14, at 16-21.

Recovered from Thompson Street, meanwhile, were three spent .380 cartridge cases, the same caliber as the .380 caliber bullet recovered from Tiana Dockens' body. The .380 bullets were discharged from an unrecovered firearm. N.T. at 44-46.

This ballistics evidence was consistent with the testimony of several witnesses who described the exchange of gunfire between Baxter, who stood on his porch with Tiana Dockens, and Appellant, who rode as passenger while his brother drove on Thompson Street.

It follows, therefore, that the only reasonable inference the jury could have drawn from the evidence was that Appellant fired a number of .380 caliber bullets toward the porch where Baxter and Dockens stood, and one of those bullets struck and killed Dockens. As such, we fail to discern what prejudicial effect counsel's stipulation to submitting the Commonwealth exhibits—including the .40 caliber Glock's magazine and holster—to the jury deliberation room could have had.

The crux of Appellant's argument is that the jury may have mistakenly believed these items were his and not Baxter's. We discern no reason to infer from the record, however, that the jury failed to understand the clear implication of the evidence that the .40 caliber Glock was fired from the porch and the .380 ammunition was fired from Appellant's car.

Moreover, even assuming *arguendo* that the jury somehow did mistakenly attribute the .40 Glock magazine and holster to Appellant, Appellant fails to demonstrate how this mistake would have made it more likely for the jury to conclude he was the person who fired the .380 caliber bullet that killed Tiana Dockens. Indeed, such a mistaken attribution of the magazine and holster to Appellant would seem more likely to promote the opposite conclusion, that is, that Appellant could not have fired the .380 ammunition if it was the .40 caliber weapon, instead, that were in his possession.

Finally, to the extent Appellant's argument asserts that the mere presence of the magazine and holster in the jury deliberation room unduly

inflamed the jury's passions so as to render it incapable of reaching a verdict based on an impartial and objective consideration of the evidence, he cites neither fact nor legal authority to support this position. Consequently, Appellant waives this point on appeal. *See* Pa.R.A.P. 2119(a) (requiring that each point treated in an argument must be "followed by such discussion and citation of authorities as are deemed pertinent"). Even if we declined to apply waiver doctrine on this point, we would fail to see how the holster and magazine could have corrupted the jury's perception of the evidence where the focus of the first-degree murder trial was on the gunfight between Appellant and Baxter. Accordingly, Appellant's second ineffective assistance of counsel claim fails.

In Appellant's final issue, he alleges direct appeal counsel improperly framed his challenge to the trial court's denial of his pretrial motion for severance as a violation of his right to cross-examine Payne-Casiano under the Confrontation Clause. Specifically, at the joint trial, the Commonwealth introduced co-defendant Payne-Casiano's note directing a fellow inmate to convince a prospective witness to testify in a manner favorable to Appellant's defense. Because Payne-Casiano did not testify at trial, Appellant could not cross-examine him with respect to the note.

On direct appeal, Appellant argued that admission of his non-testifying co-defendant's note violated his confrontation rights pursuant to the United States Supreme Court decision in ***Bruton v. United States***, 391 U.S. 123 (1968). In ***Bruton***, the High Court recognized that "there are some contexts

in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." ***Bruton***, 391 U.S. at 135. Accordingly, "[t]he ***Bruton*** Court held that, if a non-testifying co-defendant's confession directly and powerfully implicates the defendant in the crime, then an instruction to the jury to consider the evidence only against the co-defendant is insufficient, essentially as a matter of law, to protect the defendant's confrontation rights." ***Commonwealth v. Brown***, 925 A.2d 147, 157 (Pa. 2007) (citing ***Bruton***, 391 U.S. at 135–36); ***accord Commonwealth v. Canon***, 22 A.3d 210, 218 (Pa. 2011).

We held, however, that because Payne-Casiano's directive was not an assertion directly implicating Appellant's role in the crime, Appellant's confrontation clause rights were not violated. ***Commonwealth v. Gelsinger***, No. 627 MDA 2015, unpublished memorandum at 17-21 (Pa.Super. filed March 29, 2016).

Appellant summarily claims direct appeal counsel ineffectively relied on ***Bruton*** to advance his confrontation clause challenge. To this end, his counseled brief argues only "that since there was not an opportunity to cross-examine the co-defendant regarding this note, [Appellant's] constitutional rights were violated. Therefore, he was prejudiced by [direct appeal] counsel's failure to file a cross-appeal to challenge this error by the Trial Court." Appellant's brief, at 18.

The PCRA court responds that Appellant's claim in this regard "is not developed enough to review[, and] should be dismissed [accordingly]." PCRA Court Opinion, at 4. We agree Appellant's brief fails to meet the requirements of Pa.R.A.P. 2119(a), as it lacks a sufficiently developed argument permitting meaningful review of this ineffectiveness claim. For this reason, Appellant's final claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/04/2019