J-S23011-20, J-S23012-20, J-S23013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LEON OWENS | : | |
| | : | |
| Appellant | : | No. 1200 EDA 2019 |

Appeal from the PCRA Order Entered March 28, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005689-2013,
CP-51-CR-0005691-2013, CP-51-CR-0005701-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LEON OWENS | : | |
| | : | |
| Appellant | : | No. 1201 EDA 2019 |

Appeal from the PCRA Order Entered March 28, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005689-2013,
CP-51-CR-0005691-2013, CP-51-CR-0005701-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LEON OWENS | : | |
| | : | |
| Appellant | : | No. 1202 EDA 2019 |

Appeal from the PCRA Order Entered March 28, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005689-2013,

J-S23011-20, J-S23012-20, J-S23013-20

CP-51-CR-0005691-2013, CP-51-CR-0005701-2013

BEFORE: NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                          Filed: October 29, 2020

Appellant Leon Owens appeals *pro se* from the orders[1] dismissing his timely first Post Conviction Relief Act[2] (PCRA) petition without a hearing. Appellant challenges the sufficiency and weight of the evidence, as well as the trial court's failure to instruct the jury on involuntary manslaughter. Additionally, Appellant asserts that his trial counsel was ineffective for failing to (1) call witnesses to support his claim of self-defense and (2) raise a direct appeal challenge that the Commonwealth violated **Bruton**[3] during its closing argument. For the reasons that follow, we dismiss the appeals at 1201 and 1202 EDA 2019, affirm in part and vacate in part the PCRA court's order at 1200 EDA 2019, and remand for further proceedings consistent with this memorandum.

This Court previously summarized the factual history of these matters as follows:

> On April 11, 2012, at approximately 5:00 P.M., Markel Wright (Wright) was shot and killed at 53rd and Greenway Streets, in the City and County of Philadelphia. Wright was leaving a corner store

---

[1] Although this Court listed Appellant's appeals consecutively, we have consolidated them for the purpose of this decision. **See** Pa.R.A.P. 513.

[2] 42 Pa.C.S. §§ 9541-9546.

[3] **Bruton v. United States**, 391 U.S. 123 (1968).

- 2 -

when the Appellant and others engaged in a shootout on the public street.

The shooting was a part of an ongoing dispute between the Backstreet Boys and the Greenway Boys. Earlier on the day of the shooting, a number of males who were associated with the Backstreet Boys armed themselves with guns and gathered at the home of Ms. Vicki Dunbar (Dunbar) at 1647 South Wilton Street. Appellant was present and was among the armed males. Terrence Matthews (Matthews) . . . placed a telephone call to Co-defendant Ronald Ockimey (Ockimey), who lived in the northeast section of Philadelphia. Ockimey, who was related to some of the people who are a part of the Backstreet Boys, arrived at Dunbar's home with a friend. Both Ockimey and his friend were armed and they joined the other males who were already at the Wilton Street address. One of the males at the house, Lonnie [Dunbar], told the others who were gathered that two (2) males from the Greenway group named Tyreek Brown (Brown) . . . and Tyrell Artis (Artis) . . . had guns and had been giving Lonnie trouble.

Appellant said that the Backstreet group should go to Greenway Street and shoot Brown and Artis and shoot-up the rest of the block. Appellant, Ockimey, and another male walked to 53rd and Greenway Streets. On the way to Greenway Street, Appellant, Ockimey, plus the male, stopped inside the Trendsetters Bar, located at 53rd and Woodland Avenue. Appellant was a regular at this bar and was known to the bar owner, Anthony Taylor (Taylor). When the three (3) men left, they headed toward the intersection of 53rd and Greenway. Shortly after the three (3) males left the bar, Taylor heard shots and went outside to investigate. Taylor saw three (3) males, including Appellant, running down the street away from Greenway Street. Surveillance cameras located both inside and outside of the bar captured Appellant, Ockimey, and the third male entering and exiting the bar.

Warren Stokes (Stokes) plus three (3) males, including Wright, were inside of the 8 Brothers Food Market located at the intersection of 53rd and Greenway Streets when Appellant, Ockimey, and a third male approached the intersection. Stokes exited the corner store while Wright and the two (2) males remained inside. Stokes was talking to someone outside of the store when he heard gunfire and saw Wright leave the store. Wright was struck by a bullet, which caused him to fall to the curb. Stokes went to assist Wright and called 911.

> Wright was pronounced dead at 6:00 P.M. at the Hospital of the University of Pennsylvania. An autopsy performed by Assistant Medical Examiner Dr. Edwin Lieberman found that Wright was shot one (1) time in the right flank, and the bullet travelled upward through his body before exiting through the lower left eyelid. The cause of death was found to be a single gunshot wound, and the manner of death was found to be homicide. Seventeen (17) fired cartridge casings were recovered from the crime scene.

*Commonwealth v. Owens*, 532 EDA 2015, 2016 WL 2148316, at *1-2 (Pa. Super. filed May 3, 2016) (unpublished mem.) (footnote omitted and some formatting altered).

In CP-51-CR-0005701-2013 (5701-2013), the Commonwealth charged Appellant with the murder of Wright,[4] conspiracy,[5] and two violations of the Uniform Firearm Act (UFA),[6] among other offenses. The Commonwealth also charged Appellant with offenses against Brown in CP-51-CR-0005689-2013 (5689-2013) and against Artis in CP-51-CR-0005691-2013 (5691-2013).

Appellant and Ockimey proceeded to a joint jury trial. On June 11, 2014, the jury found Appellant guilty of third-degree murder, conspiracy, and the two violations of the UFA in 5701-2013. N.T. Trial, 6/11/14, at 20-21. The jury acquitted Appellant of all charges in 5689-2013 and 5691-2013. *Id.* at 21-22. On October 8, 2014, the trial court sentenced Appellant to an aggregate term of twenty-five to fifty years' imprisonment.

---

[4] 18 Pa.C.S. § 2502.

[5] 18 Pa.C.S. § 903.

[6] 18 Pa.C.S. §§ 6106(a)(1), 6108.

Appellant filed a direct appeal, and this Court affirmed. *Owens*, 2016 WL 2148316, at *8. Our Supreme Court denied Appellant's petition for allowance of appeal on October 11, 2016. *Commonwealth v. Owens*, 232 EAL 2016 (Pa. filed Oct. 11, 2016). Attorney David Rudenstein, Esq. (trial counsel) represented Appellant at trial and in his direct appeal.

On October 2, 2017, Appellant timely filed a *pro se* PCRA petition listing all three trial court docket numbers.[7] The PCRA court appointed Dennis Turner, Esq. (PCRA counsel) to represent Appellant.

On September 9, 2018, PCRA counsel filed a no-merit letter addressing claims that (1) the Commonwealth violated *Bruton* during closing arguments, (2) trial counsel told Appellant not to testify at trial, and (3) trial counsel failed to cross-examine Brown and Matthews. PCRA Counsel's Letter, 9/9/18, at 4-7. PCRA counsel's letter notified Appellant that counsel intended to file a motion to withdraw from representation. *Id.* at 7.

On September 10, 2018, the PCRA court issued a Pa.R.Crim.P. 907 notice. On September 18, 2018, PCRA counsel filed a motion to withdraw from representation.[8]

---

[7] It appears that the clerk of the PCRA court docketed and filed copies of Appellant's *pro se* petition, as well as most of the ensuing filings and orders, in all three trial court case records.

[8] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

On September 27, 2018, the PCRA court received a letter from Appellant.[9] In the letter, Appellant listed the following issues he intended to raise:

1. The unavailable witness was vital to [Appellant's] defense.

2. [Appellant's] claim of self-defense was [of] arguable merit, where counsel failed to present evidence to support the claim.

3. The verdict was against the weight of the evidence.

4. There was not enough evidence to warrant sufficiency of the evidence for [a] beyond [a] reasonable doubt verdict.

5. Jury instruction on involuntary manslaughter.

Appellant's *Pro Se* Rule 907 Resp., 9/27/18, at 1.

On February 25, 2019, PCRA counsel filed an amended no-merit letter addressing the claims in Appellant's *pro se* response. That same day, the PCRA court issued a second Rule 907 notice.

On March 19, 2019, the PCRA court received Appellant's *pro se* response to the second Rule 907 notice. Appellant initially restated the five claims he raised in his September 2018 response. Appellant's *Pro Se* Rule 907 Resp., 3/19/19, at 1. Appellant noted PCRA counsel's conclusions that those five issues lacked merit or were previously litigated. *Id.* at 1-2. Appellant then claimed that trial and PCRA counsel were ineffective for not raising or developing his ***Bruton*** issue. ***See id.*** at 2.

---

[9] Apparently, Appellant sent the letter directly to the PCRA judge. Appellant's letter only lists the 5689-2013 case number, and the letter appears only in that record.

On March 28, 2019, the PCRA court entered the order dismissing Appellant's PCRA petition and permitting PCRA counsel to withdraw. Appellant timely filed a notice of appeal. Both the order and the notice of appeal listed all three trial court docket numbers. The PCRA court did not order Appellant to file and serve a Pa.R.A.P. 1925(b) statement, but filed an opinion explaining its decision.

This Court docketed this matter as three separate appeals. On May 3, 2019, this Court issued rules to show cause why this Court should not quash the appeals based on *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018). Appellant filed responses asserting that he was unaware of *Walker*, and that he filed "his Notice of Appeal" upon receiving the PCRA court's order. Appellant's *Pro Se* Resps. to Rules to Show Cause, 5/15/19, at 1-2 (unpaginated). Appellant further noted that all the cases arose from the same criminal episode in 5689-2013. *Id.* at 2. This Court discharged the rules to show cause and referred the matter to the panel.

We initially address the *Walker* issue referred to this panel.[10] In *Walker*, our Supreme Court held that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for

_____

[10] The PCRA court briefly referred to the *Walker* issue in a footnote in its Rule 1925(a) opinion. PCRA Ct. Op., 10/11/19, at 2 n.2., Appellant did not address the issue in his appellate brief. The Commonwealth addressed the issue in its appellee's brief. The Commonwealth asserted that *Walker* does not require quashing the appeal because the jury acquitted Appellant in two of the three cases listed in his initial PCRA petition and notice of appeal. Commonwealth's Brief at 4 n.2.

each case." ***Walker***, 185 A.3d at 971. Under ***Walker***, "[t]he failure to do so requires the appellate court to quash the appeal." ***Id.*** at 977.

Instantly, Appellant filed his *pro se* PCRA petition listing three trial court docket numbers. However, the jury acquitted Appellant of all charges in two of those cases, 5689-2013 and 5691-2013, and convicted Appellant of the charges in only one case, 5701-2013. Therefore, Appellant should have filed his petition in the one trial court docket listing his convictions, *i.e.*, 5701-2013. ***See*** 42 Pa.C.S. §§ 9542 (indicating that the PCRA provides for an action for persons **convicted** of crimes), 9543(a)(1) (stating that in order to be eligible for PCRA relief, a petitioner must have been "**convicted** of a crime under the laws of this Commonwealth" (emphasis added)). The PCRA court, in turn, should have only resolved Appellant's issues in 5701-2013 because there were no PCRA issues to raise in 5689-2013 and 5691-2013. ***See*** 42 Pa.C.S. § 9543(a)(1).

In short, the filings and listings in 5689-2013 and 5691-2013 do not change the fact that the PCRA court's order properly disposed of PCRA issues arising in a single case, 5701-2013. Accordingly, ***Walker*** does not require quashing this appeal. ***See Walker***, 185 A.3d at 977. However, based on the foregoing analysis, we dismiss the appeals docketed at 1201 and 1202 EDA 2019, and address Appellant's claims in the appeal at 1200 EDA 2019.

In his *pro se* brief, Appellant presents six questions, which we have reordered as follows:

[1]. Did the trial court abuse its discretion where the evidence was insufficient as well as weak and inconclusive as to the elements of the crime and was not proven beyond a reasonable doubt?

[2]. Did the trial court abuse its discretion where the guilty verdict was against the weight of the evidence and necessitates a new trial pursuant to Pa.Crim.P. 607?

[3]. Did the trial court violate Appellant's due process where he was not given a jury instruction for involuntary manslaughter due to the evidence presented by the Commonwealth?

[4]. Whether trial counsel was ineffective for failing to present to the Court a witness, who[se] testimony was vital to the self-defense claim of Appellant?

[5]. Whether trial counsel was ineffective for failing to present and preserve Appellant's claim of self-defense where Appellant informed counsel of the identities of such witnesses?

[6]. Whether [t]rial . . . counsel was ineffective during the trial and direct appeal stage for failing to address and preserve the violation of Appellant's Confrontation Clause, where Appellant presented this claim to prior counsel(s)?

Appellant's Brief at 4-5.


**Weight, Sufficiency, and Jury Instruction Claims**

We address Appellant's first three issues together. Appellant challenges the weight and sufficiency of the evidence, as well as the trial court's refusal to include an involuntary manslaughter jury instruction. Appellant's Brief at 10-21. Appellant contends that he only shot at Artis and Brown after they shot at him first. *See id.* at 13, 17, 20-21. He also asserts that the Commonwealth did not charge Artis and Brown. *Id.* at 17, 21. Notably, Appellant presents his first three issues as direct appeal arguments. *See id.* at 10-21.

- 9 -

The Commonwealth, in relevant part, counters that Appellant raises trial court errors, which he litigated in his direct appeal. Commonwealth's Brief at 6. The PCRA court similarly concluded that Appellant's claims were previously litigated or waived under the PCRA. PCRA Ct. Op., 10/11/19, at 9.

Our standard of review from the dismissal of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Mitchell**, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted).

"To be entitled to PCRA relief, [a petitioner] must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2), and that the allegation of error has not been previously litigated or waived." **Id.** at 1265-66 (citation omitted). Issues previously litigated on direct appeal are waived under the PCRA if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]" 42 Pa.C.S. § 9544(a)(2). Further, "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b). Generally, when appealing the denial of PCRA relief, a

- 10 -

petitioner cannot raise an issue as if he were presenting claim on direct appeal. **Commonwealth v. Price**, 876 A.2d 988, 995 (Pa. Super. 2005).

Instantly, the record establishes that in Appellant's direct appeal, trial counsel challenged the sufficiency of the evidence, the weight of the evidence, and the trial court's failure to include an involuntary manslaughter jury instruction. **See Owens**, 2016 WL 2148316, at \*2. As to the sufficiency of the evidence, this Court addressed Appellant's claim that the Commonwealth failed to disprove his claim of self-defense. **See id.** at \*5 (noting that the Commonwealth's evidence rebutted Appellant's claim of self-defense by establishing, beyond a reasonable doubt, that Appellant not only violated a duty to avoid the danger, but also conspired with others to ambush the Greenway Boys). Therefore, we agree with the PCRA court that Appellant previously litigated this issue. **See** 42 Pa.C.S. § 9544(a)(2); **Ousley**, 21 A.3d at 1242; **Price**, 876 A.2d at 995.

As to the weight of the evidence, this Court concluded in Appellant's direct appeal that trial counsel "merely claim[ed] that the trial record was 'full of discrepancies' and the jury was left to guess at what occurred." **See Owens**, 2016 WL 2148316, at \*6. Nevertheless, the Court asserted that its independent review of the record revealed no abuse of discretion by the trial court when deciding Appellant's weight of the evidence issue. **See id.**

In the instant appeal, Appellant details the evidence he believes was of such greater weight than the evidence credited by the jury such that a new trial was required. **See** Appellant's Brief at 10-14. However, Appellant frames

his arguments as if on direct appeal and does not address the PCRA court's conclusion that he either previously litigated or waived this issue. Appellant's issue could have been raised on direct appeal and, therefore, was waived under the PCRA. *See* 42 Pa.C.S. § 9544(b); *Price*, 876 A.2d at 995.

As to Appellant's jury instruction claim, the record shows that trial counsel requested an involuntary manslaughter jury instruction and challenged the trial court's failure to include the instruction in Appellant's direct appeal. *See* N.T. Trial, 6/10/14, at 206-07 (discussing trial counsel's request for an involuntary manslaughter jury instruction based, in part, on *Commonwealth v. Fowlin*, 710 A.2d 1130 (Pa. 1998)); *Owens*, 2016 WL 2148316, at *6. This Court, however, concluded trial counsel did not preserve the issue for Appellant's direct appeal with a specific objection to the trial court's denial of his request for a jury instruction. *See Owens*, 2016 WL 2148316, at *6. Even if trial counsel had preserved the issue, this Court concluded the issue would not have merited relief because

> The evidence produced did not support an involuntary manslaughter charge. Also, the trial court properly found that Appellant's attempt to create a jury instruction on the basis that *Fowlin* somehow negated his liability for third degree murder was unavailing where the holding in *Fowlin* applied to a **victim** who acted recklessly in justifiable self-defense, not to an active participant who acted with malice and provoked the incident.

*Id.* at *6 n.5.

Instantly, although trial counsel did not preserve a direct appeal claim concerning the involuntary manslaughter jury instruction, Appellant continues

to frame his argument as if on direct appeal, which merits finding his argument waived under the PCRA. *See* 42 Pa.C.S. § 9544(b); *Price*, 876 A.2d at 995. In any event, this Court also addressed the merits of Appellant's claim in his direct appeal, and that conclusion is the law of the case. *See Commonwealth v. Reed*, 971 A.2d 1216, 1220 (Pa. 2009) (noting that when a prior panel determines that an issue is waived, but also determines in the alternative that they were without merit and explains the basis for its conclusions, the alternative conclusion is "a valid holding"). Therefore, Appellant is not entitled to relief based on his claim that he was entitled a jury instruction on involuntary manslaughter. *See* 42 Pa.C.S. § 9544(a)(2).

Accordingly, because Appellant previously litigated or waived his challenges to sufficiency, weight, and the involuntary manslaughter jury instruction, he could not raise them under the PCRA. As the PCRA court's resolution of Appellant's first three issues was supported by the record and free of legal error, Appellant's claims must fail. *See Ousley*, 21 A.3d at 1242.

**Failure to Call Witnesses Supporting Self-Defense Claim**

In his next two issues, Appellant asserts that trial counsel was ineffective for not presenting witnesses to support his claim of self-defense. Appellant's Brief at 22-29. The following background is relevant to our discussion of Appellant's issues. As noted above, Appellant was charged, but acquitted, of offenses against Brown and Artis. On the first day of trial, Brown appeared in court under a subpoena. *See* N.T. Trial, 6/9/14, at 17. Approximately one week later, on June 9, 2014, the Commonwealth asserted

- 13 -

that it was unable to locate Brown and moved *in limine* to admit Brown's preliminary hearing testimony. ***Id.*** at 14. Following a hearing outside the presence of the jury, the trial court determined that (1) the Commonwealth made good faith efforts to locate Brown, (2) Brown was unavailable to testify, and (3) Appellant and Ockimey had a full and fair opportunity to confront and cross-examine Brown at the preliminary hearing consistent with federal and state constitutional protections.[11] ***Id.*** at 67, 84. Over Appellant's and Ockimey's objections, the trial court ruled the Commonwealth could admit Brown's preliminary hearing testimony at trial. ***Id.*** The Commonwealth read Brown's preliminary hearing testimony into the trial record.

The Commonwealth also called Terrance Matthews, whose phone call led to the Appellant and Ockimey going to Greenway Street, and presented his written and signed statement to the police as substantive evidence. Artis did not testify at trial, and none of the parties admitted prior statements from Artis. Neither Appellant nor Ockimey testified or presented evidence at trial, although the Commonwealth admitted Ockimey's redacted statements to police in its case-in-chief.

In Appellant's direct appeal, trial counsel challenged the trial court's ruling that the Commonwealth made good faith efforts to find Brown. ***See Owens***, 2016 WL 2148316, at \*7. This Court rejected Appellant's argument, concluding that "the trial court properly exercised its discretion when it

---

[11] ***See*** Pa.R.E. 804(b)(1); ***see also Crawford v. Washington***, 541 U.S. 36 (2004); ***Commonwealth v. Bazemore***, 614 A.2d 684 (Pa. 1992).

granted the Commonwealth's motion *in limine* and found that Brown was unavailable to testify at trial." ***Id.***

In the instant PCRA proceeding, PCRA counsel filed his September 9, 2018 no-merit letter and addressed Appellant's claims that trial counsel was ineffective for failing to cross-examine Brown and Matthews. PCRA Counsel's Letter, 9/9/18, at 6-7. In relevant part, Appellant's *pro se* responses to the PCRA court's Rule 907 notices stated, in relevant part, "[t]he unavailable witness was vital to [Appellant]'s defense." Additionally, Appellant only acknowledged PCRA counsel's conclusion that his claims were previously litigated or meritless. Appellant's *Pro Se* Rule 907 Resp., 9/27/18, at 1; Appellant's *Pro Se* Rule 907 Resp., 3/19/19, at 1-2. Appellant did not allege his issues had merit or PCRA counsel's ineffectiveness as to these issues. ***See id.***

The PCRA court, in its opinion, agreed with PCRA counsel's assertion that Appellant's ineffectiveness claims regarding Brown was frivolous. PCRA Ct. Op. at 7-8 (noting that "counsel cannot be found ineffective for not cross-examining an unavailable witness"). Additionally, the PCRA court found Appellant's assertion that trial counsel was ineffective for failing to cross-examine Matthews was "without merit and belied by the record." ***Id.*** at 8.

On appeal, Appellant has abandoned his claims regarding Matthews. Appellant argues that trial counsel should have ensured the presence of Artis and Brown at trial, and examined them as vital witnesses for his defense. Appellant's Brief at 22-23. Additionally, Appellant contends that trial counsel

should have called Bernard Fields to testify that Appellant only shot at Brown and Artis after they shot at him and that Appellant was "a good person who did things for people in the community." *Id.* at 28-29.

The Commonwealth responds that Appellant waived his issues because he did not identify his witnesses in the PCRA court or file certifications for the witnesses. Commonwealth's Brief at 12-13. The Commonwealth further asserts that Appellant's arguments that Brown, Artis, or Fields could have supported his self-defense claim were meritless. *Id.* at 19-20.

Pennsylvania Rule of Appellate Procedure 302 states that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). For example, in *Commonwealth v. Roney*, 79 A.3d 595 (Pa. 2013), our Supreme Court found that the defendant waived an issue because he failed to present it to the PCRA court. *Roney*, 79 A.3d at 611.

> This Court has also held that the response to a Rule 907 notice
>
> is an opportunity for a petitioner and/or his counsel to object to the dismissal and alert the PCRA court of a perceived error, permitting the court to discern the potential for amendment. The response is not itself a petition and the law still requires leave of court to submit an amended petition.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1189 (Pa. Super. 2012) (citations and quotation marks omitted). Therefore, to preserve claims of trial counsel's ineffectiveness not set forth in an initial PCRA petition, petitioner must seek leave to amend his petition. *See id.* at 1192.

Instantly, Appellant's *pro se* petition and responses to the PCRA court's Rule 907 notices did not identify Artis or Fields as possible witnesses. Additionally, Appellant did not seek leave to amend his petition to include claims based on Artis and Fields. Accordingly, Appellant waived these issues. **See** Pa.R.A.P. 302(a); **Roney**, 79 A.3d at 611; **see also Rykard**, 55 A.3d at 1192.

As to Brown, Appellant raised his issue in the PCRA court, and PCRA counsel addressed them in his first no-merit letter. However, beyond asserting there was an unavailable witness vital to the defense, Appellant did not identify Brown or suggest or develop his arguments that Brown's testimony was vital to his defense in his *pro se* response to the Rule 907 notices. Therefore, this issue is also waived. **See Rykard**, 55 A.3d at 1189.

### *Bruton* Issue

Appellant's final issue concerns **Bruton**. By way of background, the Commonwealth presented two statements from Co-defendant Ockimey to police. In his second statement, Ockimey asserted that he went to Greenway Street to "back up" Appellant. Ockimey did not testify at trial, and the Commonwealth redacted Ockimey's references to Appellant from his statements with the terms like "the guy" or "the other guy."

Of relevance to this appeal, the Commonwealth had a detective read in the following portions of Ockimey's second statement to police:

> "Question: Mr. Ockimey could you tell us why the three of you went towards 53rd and Greenway Street that day?"

\*    \*    \*

"[Ockimey:] The other guy was going to see if those Greenway Boys were out there, and me and Dave[12] had his back."

\*    \*    \*

"Question: Mr. Ockimey, what would have happened if you came across the Greenway Street Boys?

"Answer: The guy would have called the other boys from Back Street and they would have shot the Greenway Street Boys.  **Me and Dave was just there to back up the other guy**."

N.T. Trial, 6/6/14, at 120-21 (emphasis added).  After the presentation of Ockimey's statements, the trial court instructed the jury that Ockimey's statements could only be used as evidence against Ockimey and not against Appellant.  *Id.* at 145.

During closing arguments, Appellant's trial counsel questioned the Commonwealth's ability to prove whether there was an agreement to kill anyone.  N.T. Trial, 6/10/14, at 77.  Appellant's trial counsel asserted that the Commonwealth could not prove who fired first and, therefore, there was "no conspiracy to murder."  *Id.* at 78.  Ockimey's counsel also briefly mentioned that the Commonwealth was required to prove that Ockimey "joined in an agreement, a conspiracy to kill, that he himself possessed the intent to kill." *Id.* at 89.

In its closing argument, the Commonwealth referred to Appellant's full name when discussing the charges of conspiracy:

---

[12] The record does not contain Dave's last name.

- 18 -

One other piece of law or one other idea of law you are going to be instructed on is conspiracy.  As counsel said, the essence of conspiracy is agreement.  The essence of conspiracy is agreement to do something criminal.  And in this case the Commonwealth has charged these men, the defendants, agreed to do something criminal on that day; that they agreed at that meeting, a meeting that Ockimey has told you about in regards to himself, that he attended that meeting and a meeting that Terrance Matthews has also told . . . us about, that they attended that meeting.

And what do we know about that?  We know that he left that house; that Leon Owens, one of the last things he said according to Terrance Matthews is Dave had said something about, "I didn't come down here for nothing.  What are we going to do?"  After they were discussing the fact that the Greenway Boys were taking away their drug sales or were bothering Lonnie, he said, you know, "What are you?  Bitches?  Let's go.  I'm going out there."

What does Ronald Ockimey say he said?  "I told him hold up.  I'll go with you.  Hold up.  I'll go with you.  And I told my man Dave to go, too, to come with us too."  Agreement.  Agreement.

**What else does Ronald Ockimey tell you in his statement to the police?  He says,** "**We went down there, and I was going to back up Leon Owens**.  I was going to back up the other guys with me.  I was going to back them up, and that's why I went there."

What else does Ronald Ockimey tell you?  Ronald Ockimey tells you that he went out on that street that day looking for Greenway Boys.  That's the agreement that he had made with the Backstreet Boys that he was with.  That's the agreement that he made. That's the conspiracy.  And even if he didn't fire that gun that day, even if Ronald Ockimey never fired that Glock that day, he had it in his hand, or he didn't have a gun at all, if he went with that agreement, he went there with those other people to get the Greenway Boys, to shoot the Greenway Boys, he's guilty because he's in a part of that conspiracy. And, therefore, he's equally responsible.

*Id.* at 142-44 (emphasis added).

Later in its argument, the Commonwealth told the jury that the

Ockimey's statements "only appl[y] to Mr. Ockimey, only can be used for

Ockimey." *Id.* at 152. The Commonwealth, however, later returned to the subject of the conspiracy charges and referred to Appellant's first name when discussing Ockimey's statements:

> But [the police] ask him -- they say to him -- before that, they say, "Why were you going up there? Why were you going up there?" And he goes, "We were going up there to look for Greenway Boys. We were going up there to look for Greenway Boys. I was going to back up **Leon**." Agreement. Agreement.

*Id.* at 165 (emphasis added). Appellant's trial counsel objected to this second reference to Appellant's name, and the trial court overruled the objection. *Id.* The Commonwealth continued to refer to Ockimey's statement that he was backing up Appellant but used labels such as "the guys" or "the other guy." *Id.* at 197-98.

At the conclusion of the Commonwealth's closing argument, Appellant's trial counsel moved for a mistrial based on the Commonwealth's breaking of the redaction. *Id.* at 203-04. Although trial counsel asserted that cautionary instruction could not "undo the breaking of the redaction," the trial court denied the motion and stated that it would issue a cautionary instruction. *Id.* at 204. The trial court gave the following instruction during its charge to the jury:

> Now, there is a rule that restricts the use by you of the evidence offered to show that Defendant Ockimey made statements concerning the crimes charged. A statement made before trial may be considered as evidence only against the defendant who made that statement. Thus, you may consider the statement as evidence against Defendant Ockimey if you believe that he made the statements voluntarily. You may not, however, consider the

statements as evidence against [Appellant]. You must not use the statement in any way against [Appellant].

*Id.* at 258-59.

Trial counsel filed a Pa.R.A.P. 1925(b) statement in Appellant's direct appeal asserting that the trial court erred in denying his motion for mistrial based on the Commonwealth's closing argument. Trial counsel, however, abandoned that issue in his arguments before this Court. *See Owens*, 2016 WL 2148316, at *2. Therefore, Appellant argues that under the PCRA, trial counsel was ineffective for foregoing an issue of arguable merit in Appellant's direct appeal.

After Appellant filed his *pro se* PCRA petition, PCRA counsel discussed Appellant's *Bruton* issue in his first no-merit letter. PCRA counsel concluded that the Commonwealth's closing argument was improper but did "not trigger *Bruton*'s *per se* exception to the general rule that cautionary charges may be adequate to eliminate spill over prejudice in joint trials." PCRA Counsel's Letter, 9/9/18, at 4 (citing *Commonwealth v. Brown*, 925 A.2d 147 (Pa. 2007)). PCRA counsel continued, "The potential for prejudice . . . was curable by the cautionary charge that [the] trial court gave." *Id.*

In his *pro se* response to the PCRA court's second Rule 907 notice, Appellant noted that trial counsel did not raise his *Bruton* claim in his direct appeal. Appellant's *Pro Se* Rule 907 Resp., 3/19/19, at 2. Appellant emphasized that while Ockimey's statements redacted his name, the Commonwealth named him twice in its closing argument. *Id.* Appellant

asserted the ineffectiveness of counsel at his trial, in his direct appeal, and in the instant PCRA proceeding and requested an evidentiary hearing. *Id.*

The PCRA court concluded that because the trial court properly cautioned the jury, no relief was due. PCRA Ct. Op. at 5. In support, the PCRA court cited *Brown* and *Commonwealth v. Cannon*, 22 A.3d 210 (Pa. 2011).

On appeal, Appellant contends that trial and PCRA counsel were ineffective for not advancing his *Bruton* claim. Appellant's Brief at 30. Appellant refers to the *per se* *Bruton* rule applicable to the redaction of evidence presented through a non-testifying co-defendant's statements. *Id.* at 31-32. Appellant insists that the Commonwealth violated this rule when in closing argument, it twice used Appellant's name when discussing Co-defendant's statement. *Id.* at 31.

With respect to his claims of ineffectiveness, Appellant notes that trial counsel preserved an arguably meritorious *Bruton* issue but did not raise it in Appellant's direct appeal. *Id.* at 31-32. Appellant states that trial counsel lacked a reasonable basis for challenging the denial of his motion for a mistrial in his direct appeal. *Id.* at 33. Appellant further contends that even with the trial court's cautionary instructions, the Commonwealth's use of his name resulted in "irreparable prejudice." *Id.* Appellant adds that "PCRA counsel failed to address this claim after Appellant brought it to his attention . . . ." *Id.*

The Commonwealth responds that the PCRA court properly dismissed Appellant's ineffectiveness claim because Appellant did not allege or prove a lack of reasonable basis or prejudice to sustain a claim of ineffectiveness. Commonwealth's Brief at 28. Further, the Commonwealth argues that Appellant's underlying *Bruton* issue lacked merit. *Id.* at 21. The Commonwealth relies on *Cannon* and asserts that it did not violate *Bruton*. *Id.* at 26-29. The Commonwealth argues its closing argument was proper because it used contextual implications, and because it did not use the precise language of the redaction. *Id.* at 27-28.

The following principles govern our review. To prevail on an ineffectiveness claim, the appellant must establish:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [the appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Commonwealth v. Lesko*, 15 A.3d 345, 373 (Pa. 2011) (citation omitted).

This Court has explained that

> a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in

> comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted and some formatting altered), *appeal denied*, 216 A.3d 1029 (Pa. 2019).

Claims of ineffective assistance of counsel at trial versus on direct appeal are distinct. Our Supreme Court has stated:

> With regard to reasonable basis in the appellate context, it is well settled that appellate counsel is entitled, as a matter of strategy, to forego even meritorious issues in favor of issues he believes pose a greater likelihood of success. To establish . . . prejudice in the appellate representation context, the petitioner must show that there is a reasonable probability that the outcome of the direct appeal proceeding would have been different but for counsel's deficient performance.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations and some formatting altered).

Moreover, claims of ineffective assistance of PCRA counsel requires a petitioner to layer his claim with respect to prior counsel's ineffectiveness. Therefore, a petitioner "must properly argue each prong of the three-prong

ineffectiveness test for" both prior counsel and PCRA counsel. *Rykard*, 55 A.3d at 1190 (citations omitted).

A PCRA petitioner has a rule-based right to counsel in a first PCRA petition. *Commonwealth v. Cherry*, 155 A.3d 1080, 1082 (Pa. Super. 2017). At a minimum, counsel's duties include either amending a petitioner's *pro se* PCRA petition or seeking to withdraw from representation based on a certification the petitioner's claim lacks merit. *Id.* at 1083. Even when seeking to withdraw, it is well settled that PCRA counsel "must review the case zealously," and explain why and how a *pro se* petitioner's issues lack merit. *Commonwealth v. Doty*, 48 A.3d 451, 454 (Pa. Super. 2012) (citation omitted). Moreover, the PCRA court "must then conduct its own review of the merits of the case," and will permit counsel to withdraw only if it agrees that the claims are without merit. *Id.*

With respect to *Bruton* issues, this Court has noted:

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by witnesses against him . . . ." U.S. Const. amend. VI. In *Bruton*, the U.S. Supreme Court held that a defendant "is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant."

*Commonwealth v. James*, 66 A.3d 771, 776 (Pa. Super. 2013) (some citations omitted).

- 25 -

The "*per se Bruton* rule" that a cautionary instruction cannot cure a violation of a defendant's Confrontation Clause rights under certain circumstances is "a narrow exception to the general legal principle that the jury is presumed to follow the court's instructions." **Roney**, 79 A.3d at 624. "[T]he preliminary question of whether the prosecutor's statement in closing implicated the *per se* rule of **Bruton** is primarily one of law . . . ." **Brown**, 925 A.2d at 154.

In **Brown**, our Supreme Court considered whether the Commonwealth's single statement of the defendant's name when referring to a co-defendant's redacted statement implicated the *per se* **Bruton** rule. The **Brown** Court initially concluded that the United States Supreme Court did not extend the reach of the *per se* **Bruton** rule to all comments by counsel. **Id.** at 159. Specifically, the **Brown** Court noted that a challenge to the Commonwealth's closing argument "does not pose a classic **Bruton** circumstance—*i.e.*, the issue is not an evidentiary one involving the redaction itself and the effect of the statement as redacted and as subject to a cautionary charge."[13] **Id.** at 157.

---

[13] The United States Third Circuit Court of Appeals later found that the Commonwealth's closing argument in **Brown** violated clearly established United States Supreme Court law, and that the error was not harmless. **Brown v. Superintendent Greene SCI**, 834 F.3d 506, 519, 522 (3d Cir. 2016). The federal appellate court directed the district court to issue a writ of habeas corpus and require the Commonwealth to release or retry the defendant. **Id.** However, decisions from the Third Circuit are not binding on this Court. **Hall v. Pennsylvania Bd. of Prob. & Parole**, 851 A.2d 859, 865 (Pa. 2004).

The **Brown** Court then evaluated the "context and circumstances of the [Commonwealth's] misstatement" and concluded that the misstatement was "not so egregious that **Bruton**'s *per se* rule is implicated." **Id.** at 160. Notably, the **Brown** Court considered relevant: (1) the Commonwealth's statement only affected the redaction indirectly and by inference; (2) the misstatement occurred when the Commonwealth was attempting to rebut a codefendant's claim on non-involvement; (3) the co-defendant's statement in which the defendant was named concerned a point in time after the actual killing; (4) the co-defendant's statement did not directly inculpate the defendant beyond the evidence properly introduced by the Commonwealth; (5) the Commonwealth's misstatement was isolated; and (6) the trial court issued a "direct, unequivocal, and strong" cautionary instruction. **Id.** at 160-61.

In **Cannon**, our Supreme Court similarly rejected the defendant's claim that the Commonwealth violated **Bruton** during its opening statement. **Cannon**, 22 A.3d at 212. In that case, the Commonwealth recited the substance of a co-defendant's statement using the redactions. The Commonwealth then named the defendant, telling the jury: "The evidence will show through other sources, ladies and gentlemen, the person who was with [the co-defendant] was [the defendant]." **Id.** at 215 (emphasis omitted).

Following his conviction, the defendant challenged the Commonwealth's statement in his direct appeal to this Court. **Id.** This Court vacated the judgment of sentence and remanded for a new trial. **Id.** at 216. This Court

reasoned that "the ***Bruton*** rule applied because the prosecutor's comment directly inculpated [the defendant] beyond the properly introduced evidence" and the trial court's cautionary instruction "was insufficient to cure the prejudice caused by the prosecutor." ***Id.*** (citations omitted). Our Supreme Court granted allowance of appeal and reversed this Court. ***Id.***

Our Supreme Court, in ***Cannon***, determined that the facts and circumstances of the cases did "not implicate the ***Bruton*** rule." ***Id.*** at 219. The Cannon Court explained several factors distinguished the Commonwealth's comments in that case from a more blatant and direct references to evidence. ***Id.*** at 220. First, "the prosecutor did not use the precise language of the redaction," which attenuated the link between the Commonwealth's opening statement and the co-defendant's redacted statement. ***Id.*** at 219. Second, "the prosecutor did not directly inculpate [the defendant] with [the co-defendant's] statement", but instead asserted that evidence from "other sources" would implicate the defendant in as the individual who conspired with the co-defendant. ***Id.*** The Court emphasized "[l]inking [the defendant] to the crime with other properly admitted evidence is not a violation of the ***Bruton*** rule; it is a permissible instance of contextual implication." ***Id.*** (citation omitted).

Third, the ***Cannon*** Court noted that the Commonwealth in that case, "unequivocally told the jury that the confession could be used only against [the co-defendant], presented the evidence against [the co-defendant], and then transitioned to the admissible evidence against [the defendant]." ***Id.***

- 28 -

Furthermore, when discussing the admissible evidence against the defendant, the Commonwealth explained the significance of an independent witness's statement linking the defendant to the scene of the crime and to the gun used during the crime, as well as ballistics evidence linking the gun to the killing. *Id.* at 219-20.

Fourth, the *Cannon* Court observed that "the jury received numerous cautionary and explanatory instructions that were sufficient to cure any prejudice." *Id.* at 220. Specifically, in that case, the trial court informed the jury that it could only use the co-defendant's statement against the defendant, and that the arguments by counsel were not evidence. *Id.*

Based on the foregoing analysis, the *Cannon* Court concluded that the defendant's claim that the Commonwealth violated *Bruton* by identifying him lacked merit. As the *Cannon* Court stated the Commonwealth "did not corrupt or negate the otherwise proper redaction." *Id.* at 221.

In the present case, Appellant's PCRA counsel assessment of this issue was limited. PCRA Counsel's Letter, 9/9/18, at 4. As noted above, PCRA counsel stated that the Commonwealth's closing statement, which included two references to Appellant's name when essentially quoting Co-defendant Ockimey's redacted statement, was improper. *Id.* Nevertheless, PCRA counsel concluded that the cautionary instruction cured any prejudice resulting from the Commonwealth's statements. *Id.* Similarly, the PCRA court concluded that no relief was due because "the trial court properly

cautioned the jury in accordance with the procedures set forth in **Brown** and **Cannon**." PCRA Ct. Op. at 4.

Notably, the analysis by both PCRA counsel and the PCRA court lacked any discussion of the record or the contextual and circumstantial factors our Supreme Court found relevant when addressing whether the *per se* **Bruton** rule applied to arguments by the Commonwealth. **See Cannon**, 22 A.3d at 219-21; **Brown**, 925 A.2d at 160-61. Neither PCRA counsel nor the PCRA court attempted to frame Appellant's claim within the proper framework of a claim of trial counsel's ineffectiveness for failing to raise a direct appeal claim. **See Blakeney**, 108 A.3d at 750.

In light of the foregoing, Appellant has identified an issue of arguable merit in this appeal, namely, that his PCRA counsel and the PCRA court did not properly address his **Bruton** claim. **See Cherry**, 55 A.3d at 1083. We acknowledge that Appellant did not develop a complete appellate argument in his *pro se* brief. We further acknowledge that the Commonwealth asserts that the closing argument in this case was closer to the statements made by the prosecutor in **Cannon**. Instantly, the fact that the Commonwealth **twice** named Appellant when referring to Co-defendant Ockimey's redacted statement could be one factor distinguishing the instant case from **Cannon**. Moreover, contrary to the analysis set forth by PCRA counsel and the PCRA court, our Supreme Court maintains that there may be circumstances in which statements made by the Commonwealth could violate the *per se* **Bruton** rule, and further, the High Court has not adopted a rule that the issuance of

cautionary instructions alone will defeat a claim based on an improperly prejudicial closing argument under the *per se Bruton* rule. *See Cannon*, 22 A.3d at 219-21; *Brown*, 925 A.2d at 160-61.

In sum, we are constrained to conclude that Appellant was not afforded his right to PCRA counsel in developing the possible merits of his *Bruton* claim and that the PCRA court abused its discretion when dismissing this claim and permitting PCRA counsel to withdraw. *See Cherry*, 55 A.3d at 1083; *Ousley*, 21 A.3d at 1242. Accordingly, we vacate the PCRA court's order dismissing Appellant's *Bruton* claim and remand this matter for further proceedings consistent with this memorandum.

On remand, the PCRA court may re-appoint PCRA counsel or appoint new counsel. *See Cherry*, 55 A.3d at 1083. Counsel shall zealously represent Appellant and conduct a thorough review of the present record when considering Appellant's issue that trial counsel was ineffective for presenting a *Bruton* claim in Appellant's direct appeal. *See id.* If counsel is convinced that the issue lacks merit, counsel may seek to withdraw pursuant to *Turner*/*Finley*. *See id.* If, however, counsel determines that Appellant's *Bruton* issue possesses arguable merit, counsel shall file an amended PCRA petition. *See id.* The PCRA court shall decide this issue accordingly.

**Conclusion**

For the foregoing reasons, we dismiss Appellant's appeals at 1201 and 1202 EDA 2019. At 1200 EDA 2019, we affirm the PCRA court's dismissal of Appellant's claims challenging sufficiency, weight, and the involuntary

manslaughter jury instruction which were previously litigated on direct appeal or waived for the purpose of the PCRA. Additionally, we affirm the PCRA court's dismissal of Appellant's claim that trial counsel was ineffective for failure to call witnesses in that Appellant has failed to prove error or an abuse of discretion in the PCRA court's rulings. However, we are constrained to vacate the PCRA court's ruling dismissing Appellant's claim that trial counsel was ineffective for raising a ***Bruton*** claim in Appellant's direct appeal and permitting PCRA counsel to withdraw, and we remand this matter for further proceedings consistent with this memorandum.

Order affirmed in part and vacated in part at 1200 EDA 2019. Case remanded for further proceedings with instructions. Appeals at 1201 and 1202 EDA 2019 dismissed. Jurisdiction relinquished.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/29/20